# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

GENERAL ELECTRIC CAPITAL
CORPORATION, a foreign corporation,

        Plaintiff,                              **Case No. 2:06-cv-14368**
                                                       Hon. George Caram Steeh

vs.                                              Mag. Donald A. Scheer

JAMES P. HOVEY, d/b/a PURPLE LEAF NURSERY,
and CINCINNATI INSURANCE COMPANY
an Ohio corporation,

        Defendants,

## AND

        JAMES P. HOVEY, d/b/a PURPLE LEAF NURSERY,

                Third-Party Plaintiff,

vs.

        CINCINNATI INSURANCE COMPANY, an Ohio corporation,

                Third-Party Defendant.

## CONSOLIDATED WITH:

CINCINNATI INSURANCE COMPANY,
an Ohio corporation,

                Plaintiff,                        Case No. 2:07-cv-14715
                                                       Hon. George Caram Steeh

vs.                                              Mag. Donald A. Scheer

JAMES P. HOVEY d/b/a PURPLE LEAF NURSERY,
PURPLE LEAF LEASING, L.L.C.,
a Michigan limited liability company,
GENERAL ELECTRIC CAPITAL CORPORATION,
a foreign corporation,

CATERPILLAR FINANCIAL SERVICES CORPORATION,
a Delaware corporation, and
WELLS FARGO EQUIPMENT FINANCE, INC.,
a Minnesota corporation,

       Defendants.

**AND**

WELLS FARGO EQUIPMENT FINANCE, INC.,
JAMES P. HOVEY d/b/a PURPLE LEAF NURSERY,

       Counter-Plaintiffs,

vs.

CINCINNATI INSURANCE COMPANY,

       Counter-Defendant.

**AND**

WELLS FARGO EQUIPMENT FINANCE, INC.,

       Third-Party Plaintiff,

vs.

MILLER INSURANCE GROUP, a Michigan corporation,
and SCOTT T. MILLER, an individual,

       Third-Party Defendants.

| | |
|---|---|
| HEIDI E. WARREN (P69714)<br>DANIEL G. KIELCZEWSKI (P42875)<br>**ABBOTT NICHOLSON, P.C.**<br>Attorneys for General Electric Capital<br>300 River Place, Suite 3000<br>Detroit, MI 48207<br>(313) 566-2500 | CYNTHIA FULLWOOD (P57972)<br>**CYNTHIA FULLWOOD, PLC**<br>Attorney for James P. Hovey and Purple Leaf<br>Leasing<br>138 Harrow Lane, Suite 4<br>Saginaw, MI 48638<br>(989) 792-3396 |
| GLEN HOWARD PICKOVER (P43373)<br>**GREGORY AND MEYER, P.C.**<br>Attorneys for Cincinnati Insurance<br>340 E. Big Beaver Road, Suite 520<br>Troy, MI 48083<br>(248) 689-3920 | KEVIN J. O'DOWD (P39383)<br>**DICKINSON WRIGHT, PLLC**<br>Attorney for Caterpillar Financial<br>200 Ottawa Avenue NW, Suite 900<br>Grand Rapids, MI 49503<br>(616) 458-1300 |

| | |
|---|---|
| BRIAN C. SUMMERFIELD (P57514) | JOHN R. MONNICH (P23793) |
| TRACY E. VAN DEN BERGH (P70066) | Attorney for Miller Ins. Group/Scott Miller |
| **BODMAN, LLP** | 306 S. Washington Avenue, Suite 207 |
| Attorney for Wells Fargo Equipment | Royal Oak, MI  48067 |
| 201 W. Big Beaver Road, Suite 500 | (248) 548-4747 |
| Troy, MI  48084 | |
| (248) 743-6000 | |

> Pursuant to L.R. 7.1, Cincinnati Insurance Company has attempted to contact counsel for Defendants and Third-Party Plaintiff seeking concurrence relative to the issues presented in this Motion on September 23, 2008.  The Parties have failed to respond or declined concurrence.

## PLAINTIFF/THIRD-PARTY DEFENDANT & COUNTER-DEFENDANT, CINCINNATI INSURANCE COMPANY'S, MOTION FOR SUMMARY JUDGMENT

## ORAL ARGUMENT REQUESTED

NOW COMES Plaintiff/Third-Party Defendant and Counter-Defendant, Cincinnati Insurance Company ("Cincinnati"), by and through its attorneys, Gregory and Meyer, P.C., and states the following for its Motion for Summary Judgment brought pursuant to Fed. R. Civ. P. 56(C).

1.    Defendant/Third-Party Plaintiff, James P. Hovey d/b/a Purple Leaf Nursery ("Hovey"), filed this action in response to an action filed by GE Capital asserting that Cincinnati Insurance Company owed him the obligation to indemnify him for theft of certain equipment (**Exhibit A**, Third-Party Complaint).

2.    The policy was issued to Blue Badger, Inc. (See Document #39-6).

3.    When the policy was issued, there was no request made to add James Hovey as an interested party (**Exhibit B**, Application for Insurance; **Exhibit C**, Deposition of Amy Bartes,

p. 22). After the policy was issued to Blue Badger, a request was made to endorse certain equipment onto the policy (**Exhibit D**, Request to Endorse Equipment).

4.      Thereafter, representatives of Wells Fargo, GE Capital and Caterpillar Financial made a request to the Miller Insurance Group (hereafter the "Agency") that they receive notice of insurance coverage and that they be added as loss payees to the Blue Badger policy, as well as James Hovey be listed as an additional insured (**Exhibit E**, Communications with the Agency).

5.      Representatives of the Agency prepared "Evidence of Insurance Forms" which were sent to the respective lienholders (**Exhibit F**, Evidence of Insurance Forms).

6.      The "Evidence of Insurance Forms" were never communicated to Cincinnati, nor was a request made by the Agency to Cincinnati to endorse the loss payees (GE Capital, Wells Fargo or Caterpillar) onto the policy, or add James Hovey as an additional insured to the policy (**Exhibit C**, Bartes Deposition, p. 29).

7.      James Hovey d/b/a Purple Leaf **Nursery**, not Blue Badger, owned the equipment (**Exhibit G**, Equipment Titles; See Document #49-3, transcript pp. 18, 64, 65).

8.      James Hovey entered into an oral agreement with Blue Badger to lease the equipment. The oral lease provided payments would be made only while the equipment was being used by Blue Badger (See Document #49-3, transcript p. 5).

9.      On or about July 29, 2006, James Hovey claims the equipment at issue in this litigation was discovered missing (**Exhibit H**, Police Report).

10.      Thereafter, on or about August 1, 2006, notice was given by Blue Badger that it was seeking coverage for the theft of the equipment (See Document #39-5).

11.     During the claim investigation, each of the respective loss payees filed an action against Hovey (on information and belief) due to a default on the financing agreement.   On information and belief, the default occurred before the loss was reported to Cincinnati.

12.     During the pendency of the companion action in this case filed by GE Capital, Hovey filed a Third-Party Complaint against Cincinnati seeking to assert his right to proceeds under the policy issued to Blue Badger.

13.     Hovey asserts that he while doing business as Purple Leaf **Nursery**, he acted as agent for Blue Badger and negotiated the insurance contract.

14.     However, Hovey admitted during his Examination Under Oath that he was the Vice President of Blue Badger when the policy was applied for.   Further, before any contract could be entered into, the principal shareholder, Gary House, had to approve the contract, and it was Blue Badger that actually acquired the insurance (See Document #39-3, p. 26; See Document #39-4, p. 13).

15.     Hovey further alleged in the complaint, and in response to a motion for summary judgment previously filed, that he and his d/b/a are additional insureds and/or third-party beneficiaries under Blue Badger's policy of insurance, and therefore was entitled to bring the Third-Party Complaint and to assert the right to pursue recovery of monies owed under Blue Badger's policy of insurance.

16.     Hovey asserts that he is an identified additional insured under the Blue Badger policy as a result of an "Evidence of Insurance Form" that was created by the agency (**Exhibit F**, Evidence of Insurance Form).

17.     Hovey admits he had no knowledge of the "Evidence of Insurance Form" until the inception of this litigation and a copy of the Agency file was provided to his counsel (**Exhibit I**, Answers to Interrogatories #6 and 7).

18.     Hovey and a separate entity, Purple Leaf Leasing, LLC, also have brought a Counter-Claim in response to the Complaint for Declaratory Relief filed by Cincinnati asserting a breach of contract relative to a policy issued by Cincinnati to Purple Leaf Leasing, LLC.

19.     Hovey had established a separate entity called Purple Leaf Leasing, LLC.

20.     Prior to reporting the loss of the equipment (July 29, 2006), the equipment was removed from the Blue Badger policy of insurance and placed onto a policy naming Purple Leaf Leasing, LLC as the named insured (**Exhibit J**, Purple Leaf Leasing, LLC Policy of Insurance; **Exhibit K**, Email Re: Removal and Placement of Equipment).

21.     Just prior to Cincinnati being joined in the GE Capital litigation, Purple Leaf Leasing, LLC (over one year after the loss) submitted a Proof of Loss to Cincinnati (**Exhibit L**, Proof of Loss).  Cincinnati thereafter denied Purple Leaf Leasing's claim (**Exhibit M**, Denial of Claim letter).

22.     Relative to the Blue Badger policy of insurance, Hovey is not a third-party beneficiary as his identity and interest in the property was never disclosed to Cincinnati or communicated to Cincinnati (**Exhibit N,** Affidavit of Scott Albaugh; **Exhibit C**, Bartes Deposition, pp. 28-29).

23.     Hovey is not an additional insured under the Blue Badger policy of insurance as he is not endorsed on the policy.

24.     The Evidence of Insurance Form relied upon by Hovey and the other Defendants is not an endorsement, and does not, by itself, confer coverage.  See *Tribeca Broadway*

*Associates, LLC v Mount Vernon Fire Ins Co,* 774 NYS2d 11 (NY AD Dept 2004); *Auto-Owners Ins. Co. v Michigan Mut. Ins. Co.*, 223 Mich App 205, 215; 565 NW2d 907 (1997); *West American Ins Co v Meridian Mutual Ins Co*, 230 Mich App 305, 310-312; 583 NW2d 548, 550-551 (1998).

25.     Agency representatives Amy Bartes and Scott Miller stated in their depositions that:

a.   They are an independent insurance agency;

b.   They represent the insured;

c.   They did not know that Hovey personally owned the equipment;

d.   They never communicated to Cincinnati that Hovey owned the equipment;

e.   When the Blue Badger policy was initially applied for, Hovey made no request to add his interest as an additional insured;

f.   Hovey never told them that he personally owned the equipment;

g.   When the Purple Leaf Leasing policy was applied for, Hovey stated that Purple Leaf Leasing, not himself, owned the equipment;

h.   They never communicated a request to Cincinnati to endorse Hovey onto the Blue Badger policy of insurance;

i.   They never communicated a request to Cincinnati to endorse the other Defendants, GE Capital, Wells Fargo or Caterpillar, onto the Blue Badger policy of insurance;

j.   The only named insured on the Purple Leaf Leasing policy is Purple Leaf Leasing;

k.   When equipment was moved to the Purple Leaf Leasing policy, Hovey told Scott Miller the equipment was owned by Purple Leaf Leasing;

l.   Both policies were issued based upon the information provided to the Agency by James Hovey; and

m.   Scott Miller never knew that Hovey was the owner of the equipment.

(**Exhibit C,** Bartes Deposition, pp. 22, 28, 29, 31, 34, 35, 60, 61; **Exhibit O,** Miller Deposition, pp. 7-8, 10, 18, 19, 36, 37,40, 45, 52, 53, 86).

26.     Wells Fargo has also filed a Counter-Claim against Cincinnati asserting that Cincinnati made misrepresentations relative to the issuance of the Evidence of Insurance Form and allegedly promised to indemnify it as a loss payee in the event a claim was presented under the Blue Badger policy of insurance (**Exhibit P,** Wells Fargo Counter-Claim).

27.     Agency representatives admitted that a request to endorse the policy to add an additional insured or loss payee needed to be made separate from the preparation of the Evidence of Insurance Form (See **Exhibit C**, Bartes Deposition, pp. 22, 28, 29; **Exhibit N**, Albaugh Affidavit, supra).

28.     Agency representatives admitted that a request to change (endorse) the policy and add as loss payees GE Capital, Wells Fargo and Caterpillar was never sent to Cincinnati.

29.     Cincinnati made no representation to Wells Fargo relative to coverage under the Blue Badger policy of insurance, and never agreed to afford coverage to Wells Fargo or any of the other loss payees under Blue Badger's policy of insurance (**Exhibit N**, Albaugh Affidavit).

30.     Any misrepresentation, if any, relates to the preparation of the Evidence of Insurance Form which was prepared by Blue Badger's agent.

31.     Relative to the policy of insurance issued to Purple Leaf Leasing, LLC, Wells Fargo, GE Capital and Caterpillar are endorsed on that policy as loss payees.  However, Purple Leaf Leasing, LLC did not own or possess the equipment at the time of the loss (**Exhibit G,** Equipment Titles**;** See Document #49-3, transcript pp. 18, 20, 64).

32.     Purple Leaf Leasing's interest was, at best, gratuitous to the extent that James Hovey directed that lease payments from the equipment made by Blue Badger should be paid to Purple Leaf Leasing, LLC.

33.     At the time of the loss, no lease payments were being received by Purple Leaf Leasing, LLC, as the equipment was sitting idle in Florida from May of 2006 until the loss was discovered on July 29, 2006 (See Document #49-3, p. 19; See Document #39-3, p. 37).

34.     Purple Leaf Leasing, LLC had no insurable interest in the property at the time of the loss, and is therefore not entitled to insurance proceeds.

35.     The loss payees having no greater rights to the proceeds than the named insured, the loss payees have no right to receipt of proceeds under the Purple Leaf Leasing policy.

36.     Cincinnati had no knowledge of Hovey's interest at the time of the loss, as again the Agency believed the property was owned by Purple Leaf Leasing, LLC.

37.     A party's rights are fixed at the time of the loss.

38.     Hovey has admitted he cannot establish the date of the loss (See Document #49-3, transcript p. 51).

39.     Hovey has the burden of establishing coverage under the policy(ies).  See *Elston-Richards Storage Co. v Indemnity Ins Co of North America*, 194 F Supp 673 (ED Mich, 1960, *aff'd* 291 F2d 627 (6th Cir. 1961)).

40.     Hovey has admitted he cannot establish that the property was or was not stolen while the Blue Badger Policy was in force, or while the Purple Leaf Leasing, LLC policy was in force.

41.     Having failed to establish the date of the loss and that coverage was in force when the equipment was stolen, Hovey and the loss payees cannot assert a right to recovery under either policy of insurance.

WHEREFORE, Plaintiff/Third-Party Defendant and Counter-Defendant, Cincinnati Insurance Company, respectfully requests that this Honorable Court declare the rights of the parties and find that Cincinnati has no obligation to indemnify the Defendants.   Further, Cincinnati asks that the Counter-Claims be dismissed with prejudice.

Respectfully submitted,

By:     /s/ Glen Howard Pickover
        GREGORY AND MEYER, P.C.
        Attorney for Cincinnati Insurance Company
        340 E. Big Beaver Road, Suite 520
        Troy, MI  48083
        (248) 689-3920
        gpickover@gregorylaw.com
        (P43373)

Dated:  October 1, 2008

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

GENERAL ELECTRIC CAPITAL
CORPORATION, a foreign corporation,

       Plaintiff,                             **Case No. 2:06-cv-14368**
                                                Hon. George Caram Steeh
vs.                                        Mag. Donald A. Scheer

JAMES P. HOVEY, d/b/a PURPLE LEAF NURSERY,
and CINCINNATI INSURANCE COMPANY
an Ohio corporation,

       Defendants,

**AND**

       JAMES P. HOVEY, d/b/a PURPLE LEAF NURSERY,

              Third-Party Plaintiff,

vs.

       CINCINNATI INSURANCE COMPANY, an Ohio corporation,

              Third-Party Defendant.

**CONSOLIDATED WITH:**

CINCINNATI INSURANCE COMPANY,
an Ohio corporation,

              Plaintiff,                       Case No. 2:07-cv-14715
                                                Hon. George Caram Steeh
vs.                                        Mag. Donald A. Scheer

JAMES P. HOVEY d/b/a PURPLE LEAF NURSERY,
PURPLE LEAF LEASING, L.L.C.,
a Michigan limited liability company,
GENERAL ELECTRIC CAPITAL CORPORATION,
a foreign corporation,

CATERPILLAR FINANCIAL SERVICES CORPORATION,
a Delaware corporation, and
WELLS FARGO EQUIPMENT FINANCE, INC.,
a Minnesota corporation,

       Defendants.

**AND**

WELLS FARGO EQUIPMENT FINANCE, INC.,
JAMES P. HOVEY d/b/a PURPLE LEAF NURSERY,

       Counter-Plaintiffs,

vs.

CINCINNATI INSURANCE COMPANY,

       Counter-Defendant.

**AND**

WELLS FARGO EQUIPMENT FINANCE, INC.,

       Third-Party Plaintiff,

vs.

MILLER INSURANCE GROUP, a Michigan corporation,
and SCOTT T. MILLER, an individual,

       Third-Party Defendants.

| | |
|---|---|
| HEIDI E. WARREN (P69714) | CYNTHIA FULLWOOD (P57972) |
| DANIEL G. KIELCZEWSKI (P42875) | **CYNTHIA FULLWOOD, PLC** |
| **ABBOTT NICHOLSON, P.C.** | Attorney for James P. Hovey and Purple Leaf |
| Attorneys for General Electric Capital | Leasing |
| 300 River Place, Suite 3000 | 138 Harrow Lane, Suite 4 |
| Detroit, MI  48207 | Saginaw, MI  48638 |
| (313) 566-2500 | (989) 792-3396 |
| | |
| GLEN HOWARD PICKOVER (P43373) | KEVIN J. O'DOWD (P39383) |
| **GREGORY AND MEYER, P.C.** | **DICKINSON WRIGHT, PLLC** |
| Attorneys for Cincinnati Insurance | Attorney for Caterpillar Financial |
| 340 E. Big Beaver Road, Suite 520 | 200 Ottawa Avenue NW, Suite 900 |
| Troy, MI  48083 | Grand Rapids, MI  49503 |
| (248) 689-3920 | (616) 458-1300 |

| | |
|---|---|
| BRIAN C. SUMMERFIELD (P57514) | JOHN R. MONNICH (P23793) |
| TRACY E. VAN DEN BERGH (P70066) | Attorney for Miller Ins. Group/Scott Miller |
| **BODMAN, LLP** | 306 S. Washington Avenue, Suite 207 |
| Attorney for Wells Fargo Equipment | Royal Oak, MI  48067 |
| 201 W. Big Beaver Road, Suite 500 | (248) 548-4747 |
| Troy, MI  48084 | |
| (248) 743-6000 | |

## BRIEF IN SUPPORT OF CINCINNATI INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

### FACTS

This is a consolidated action arising out of the claimed theft of certain construction equipment.  The theft is claimed to have occurred sometime between July 10 and July 29, 2006; however, in reality the so-called claimant does not know the date the loss occurred (See Document #49-3, transcript p. 51).  Cincinnati previously filed a Motion for Summary Disposition (Document #39) and a Reply to Hovey's Response (Document #49).  Cincinnati incorporates herein the factual summary set forth in that previous motion.

The property at issue (directional boring equipment used for construction) was insured under a policy (No. CAP-5072914) obtained by Blue Badger, Inc., a company that performs pipe installation and distribution work.

James P. Hovey d/b/a Purple Leaf Nursery ("Hovey") filed a Third-Party Complaint asserting in part that he is entitled to insurance under Blue Badger's policy as a third-party beneficiary and/or as an additional insured.  At the time the Blue Badger policy was issued (November of 2005), Hovey was working for Blue Badger as its Vice President (See Document #39-3, p. 26), Hovey solicited the insurance on behalf of Blue Badger, and the principal shareholder of Blue Badger, Gary House, approved and signed the application (See Document #39-4, p. 13). After the policy was issued, the equipment at issue was added to the policy

3

(**Exhibit D**, Request to Endorse Equipment).  Hovey argues that he is a third-party beneficiary because the Miller Insurance Group ("Agency"), and in turn Cincinnati, knew that he personally owned this equipment.  The agent, however, denies that he knew Hovey owned the equipment, and in any event, Hovey's interest in the property was never communicated by the agent to Cincinnati (**Exhibit C**, Bartes Deposition, pp. 28, 29; **Exhibit N**, Albaugh Affidavit**; Exhibit O**, Miller Deposition, pp. 36-37).  The equipment in question was added to Blue Badger's policy after the policy was issued (**Exhibit D**, Request to Endorse Equipment).  When the application was applied for, Hovey's name is nowhere to be seen (**Exhibit B**, Application for Insurance).  However, Hovey admitted during his EUO that it was an oversight on his part not to ask that he be listed as an additional insured on the Blue Badger policy (See Document #39-3, p. 29).

After the equipment was added to Blue Badger's policy, certain lienholders sought to have their interest protected.  These lienholders corresponded with the Agency and requested that they be added as loss payees. The also asked that Hovey be added as an additional insured (**Exhibit E**, Communications with Agency). The Agency in turn issues "Evidence of Insurance Forms", and on information and belief, sends them to the respective lienholders.  However, a request to endorse these interests was never sent to Cincinnati (**Exhibit C**, Bartes Deposition, pp. 28-29).  Cincinnati had never been told that Hovey had an interest in the equipment (**Exhibit N**, Albaugh Affidavit).  Cincinnati was never asked to endorse the policy to add GE Capital, Wells Fargo or Caterpillar onto the Blue Badger policy.  Cincinnati did not prepare or issue the "Evidence of Insurance Forms" (**Exhibit N**, Albaugh Affidavit).

Hovey, who actually owned the equipment, entered into an agreement with Blue Badger to lease the equipment.  The agreement provided that Blue Badger would pay for the equipment when Blue Badger was using it.  In February of 2006, the equipment was taken to Florida for a

job.  Thereafter, the equipment was "parked" around the third week of May because there was no work (See Document #39-3, pp. 32, 37, 44, 45, 51, 54, 55; See Document #49-3, transcript p. 65).  From May until the date the loss was reported, Blue Badger was not using the equipment, and therefore no rent or lease payments were being made.

On July 17, 2006, the equipment was removed from Blue Badger's policy and placed on a separate policy issued by Cincinnati to Purple Leaf Leasing, LLC (**Exhibit J**, Purple Leaf Leasing Policy of Insurance; **Exhibit K**, E-Mail Re: Removal and Placement of Equipment).[1] On July 29, 2006, Hovey discovers the equipment is missing and reports the claim under the Blue Badger policy (See Document #39-5).

Cincinnati performs an investigation. During this time, GE Capital, Wells Fargo and Caterpillar look to Hovey to make good on lease obligations he made when he purchased the equipment.  It would appear that on the date the loss was reported, Hovey was in arrears on his loan obligations.  Each of the lienholders have filed various actions either in Michigan State Courts or this Court, and have judgments pending against Hovey.  In response to the action filed by GE Capital, Hovey filed a Third-Party Complaint asserting Cincinnati owed him for the lost equipment.  Hovey argues that he is either a third-party beneficiary or an additional insured. Concerned that the loss payees would also seek to sue Cincinnati, Cincinnati initiated a declaratory action seeking to have this Court declare the rights of the parties.  Hovey was named as a Defendant in the declaratory action, and in response, Hovey filed a Counter-Claim (along with the LLC) for breach of contract (claims for fraud have been dismissed).  Wells Fargo also filed a Counter-Claim alleging fraud and breach of contract.

---

[1] As a side note, in July of 2006, Hovey obtained a separate policy of insurance for some of the same equipment that was insured through Blue Badger in the name of a separate entity called Purple Leaf Leasing, LLC.  Hovey is the principal member of the LLC. The LLC did not file a claim until September of 2007, just before this litigation was commenced.

## **LAW AND ARGUMENT**

## **STANDARD OF REVIEW**

Pursuant to Fed R Civ P 56(C), a party is entitled to judgment as a matter of law if there is no genuine issue as to any material fact.  A court reviewing a motion brought pursuant to Fed R Civ P 56(C) must review all pleadings, depositions, affidavits and admissions on file and consider all facts in a light most favorable to the non-moving party.  *Matsuhita Elec Indus Co v Zenith Radio Corp,* 475 US 574, 587; 106 S Ct 1348; 89 L Ed 2d 538 (1986); *Schaffer v AO Smith Harvestore Prod,* 74 F3d 722, 727 (6th Cir, 1996) (quoting *Anderson v Liberty Lobby, Inc,* 477 US 242, 255; 106 S Ct 2505; 91 L Ed 2d 202 (1986)).  Once the moving party satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *Kramer v Bachan Aerospace Corp,* 912 F 2d 151, 153-154 (6th Cir, 1990).  The non-moving party may not rest on its pleadings, but must present "specific facts showing that there is a genuine issue for trial."  *Celotex Corp v Catrett,* 477 US 317, 324; 106 S Ct 2548; 91 L Ed 2d 265 (1986) (citing Fed R Civ P 56(e)).  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson,* 477 US at 251-52.  The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented."  *Id* at 252.  The "mere possibility" of a factual dispute is not enough."  *Mitchell v Toledo Hospital,* 964 F2d 577, 582 (6th Cir 1992) (quoting *Gregg v Allen-Bradley Co*, 801 F2d 859, 863 (6th Cir, 1986)).

## MICHIGAN CONTRACT LAW

Although this case is pending in federal court, James P. Hovey d/b/a Purple Leaf **Nursery** is claiming rights under a contract for insurance intended to be enforced in Michigan and covering a Michigan business. Thus, Michigan law regarding the interpretation of insurance contracts is pertinent to this dispute.

Michigan courts apply general rules of construction in interpreting insurance policies. In the first place, the declaration pages are an integral part of the insurance contract and must be read in conjunction with all the other portions of the policy. See *Royal Property Group LLC v Prime Ins Syndicate, Inc,* 267 Mich App 708, 715; 706 NW2d 426 (2005). Further, interpretation of a contract with clear language is a question of law, which is reviewed de novo. *Auto Club Ins Ass'n v Lozanis*, 215 Mich App 415, 419; 546 NW2d 648 (1996), overruled in part on other grounds in *Perry v Sied,* 461 Mich 680, 690; 611 NW2d 516 (2000). A court determines whether the policy is clear and unambiguous on its face. *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 206; 476 NW2d 392 (1991). Courts may not create ambiguities where none exist. *Fire Ins Exchange v Diehl,* 450 Mich 678, 687; 545 NW2d 602 (1996). Clear and unambiguous language may not be rewritten under the guise of interpretation; contract terms must be enforced as written, and unambiguous terms must be construed according to their plain and commonly understood meaning. *Upjohn, supra* at 207; *Lozanis, supra.* Additionally, an insurance contract should be viewed as a whole and read to give meaning to all its terms. *Fresard v Michigan Millers Mut Ins Co,* 414 Mich 686, 694; 327 NW2d 286 (1982). Conflicts between clauses should be harmonized, and a contract should not be interpreted so as to render it unreasonable. *Id.*

## A.  BLUE BADGER POLICY OF INSURANCE

**I.      Hovey Is Not Entitled To Proceeds Under Blue Badger's Policy**

Hovey initially appeared to be asserting in the Third-Party Complaint that he has a vicarious right to coverage for himself and Purple Leaf Nursery under the Blue Badger policy under the well-established principle that a principal is responsible for the acts of its agents done within the scope of the agent's authority.  *Dick Loehr's, Inc. v Secretary of State*, 180 Mich App 165, 168; 446 NW2d 624 (1989).

However, Hovey testified that at the time he negotiated the insurance contract, he was Vice President of Blue Badger. As Vice President, he only had authority to solicit a quote from Cincinnati.  Only the President of the company (Gary B. House) had authority to bind Blue Badger to coverage (See Document #39-3, p. 26).  House confirmed that Hovey did not have authority to enter into contracts on Blue Badger's behalf, only to negotiate them (See Document #39-4, p. 13).  Hovey now asserts that he is a third-party beneficiary of the Blue Badger policy, or is an additional insured by virtue of the "Evidence of Insurance Form" issued by the Agency. In response to a previous Motion for Summary Judgment, Hovey argued that he was an intended beneficiary of the contract between Cincinnati and Blue Badger and therefore is entitled to proceeds.  Hovey, in his fact summary, stated:

> Hovey dutifully provided Miller and Cincinnati full documentation from each company providing the financing. Miller and Cincinnati were aware that Hovey was required to be personally liable for the financing even though he was also doing business under Purple Leaf Leasing, LLC and Purple Leaf Nursery d/b/a.

As will be discussed, there are two policies of insurance, and as relates to the second policy that was issued on July 17, 2006, that statement may be true; however, testimony from the Agency's representatives suggest otherwise.  However, addressing the policy that was issued to

Blue Badger, this is simply not the case.  The owner of the Agency, Scott Miller, testified that he had no idea who owned the equipment (**Exhibit O**, Miller Deposition, pp. 136-137).  As far as he was concerned, it was Blue Badger's equipment. Hovey did not provide any financial documentation to the Agency; it was the financing companies themselves that contacted the Agency and requested that their interests be protected (**Exhibit E**, Communications with Agency).  Hovey has presented no substantive admissible evidence that he gave any documents or records to Scott Miller or Amy Bartes regarding his interest in the property when the policy was applied for or when the property was added.  Hovey argued in response to the initial motion that he has an insurable interest in the property.  Cincinnati does not dispute this.  Hovey, as owner, would most certainly have an insurable interest; however, his interest was not protected by the terms of the policy. The policy provides:

> In Return for the Payment of the Premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in the policy.  (See Document #39-6, Form IA 501 02 01)

The term "you" is defined in the Building and Personal Property Coverage Form (See Document #39-6, Form FM 101 04 04) as the Named Insured Shown in the Declarations.  The Declarations page (Form IA 501) states the named insured is Blue Badger.  No other named insured is listed or identified.

Hovey cites in support of his position MCL 600.1405, and relies upon *Cenovski Inc v Michigan Mut Ins Co,* 200 Mich App 725; 504 NW2d 722 (1993).  In *Cenovski*, the Court held that while not the named insured, Cenovski could assert a claim as a third-party beneficiary because the application Michigan Millers accepted to insure Cenovski's automobile identified Cenovski as the titleholder to the vehicle. A review of the Blue Badger policy establishes that nowhere was Mr. Hovey named, listed or identified as having any interest in the equipment that

was being insured when the policy was applied for. Nor does the email from the Agency to Cincinnati identify Hovey as the owner. As such, Cincinnati would have no notice of his interest. Although information is sent to the Agency (by the lienholders) asking that Hovey's interest be endorsed onto the Blue Badger policy as an additional insured, the Agency does not communicate this information to Cincinnati.  As noted, the first notice that there were lienholders on the equipment was after these lienholders contacted the Agency and requested that their interests be protected. This was after the policy was issued (**Exhibit D**, Request to Endorse Equipment).  None of these loan agreements were sent or delivered to Cincinnati.  The Change Endorsement makes no mention of Hovey or the lienholders.  Scott Miller admits the Agency is an independent agent, and the agent of the insured.  See *Auto-Owners Ins. Co. v. Michigan Mut. Ins. Co.*, 223 Mich App 205, 215; 565 NW2d 907 (1997); *West American Ins Co v Meridian Mutual Ins Co*, 230 Mich App 305, 310-312; 583 NW2d 548, 550-551 (1998).  In both *Auto-Owners* and *West American*, the agent is the entity that issues the "Evidence (Certificate) of Insurance" forms. The Court observed that the agency is the agent of the insured not the insurer. The independent agent's actions do not amount to notice to the insurer.  Since Ms. Bartes admits that the requests to add Hovey as an additional insured were not communicated, nor that his interest in the property was ever communicated to Cincinnati, there can be no basis for the assertion that Hovey is a third party beneficiary of the Blue Badger contract.  See *Shafer Oil Co. v Universal Underwriters Ins Co.*, 820 F. Supp 321 (ED Mich 1993).

## II.    The Evidence Of Insurance Forms Do Not Confer Coverage Upon The Lienholders Or Hovey

Around the time that the equipment was added to the policy, representatives from the respective lienholders contacted the Agency asking for evidence of insurance. They wished to be

listed as loss payees on the policy, and also wanted Hovey added as an additional insured.  The requests resulted in Amy Bartes of the Agency preparing and sending to the lienholders "Evidence of Insurance Forms" which represent to list each of the lienholders as loss payees, as well as Hovey as an additional insured.

It is expected that the lienholders will argue that the forms are endorsements to the policy, or separate insurance in its own right, and therefore require Cincinnati to pay them for the theft of the equipment. See *Tribeca Broadway Associates, LLC v Mount Vernon Fire Ins Co,* 774 NYS2d 11 (NY AD Dept 2004); *Auto-Owners Ins. Co. v Michigan Mut. Ins. Co.*, 223 Mich App 205, 215; 565 NW2d 907 (1997); *West American Ins Co v Meridian Mutual Ins Co*, 230 Mich App 305, 310-312; 583 NW2d 548, 550-551 (1998).

In each instance, a certificate (evidence) of insurance form is issued by the agent. In *Auto-Owners* and *West American*, the courts note that the certificates are issued by the agent. The agent is an independent agent and is the agent of the insured, not the insurer.  The certificate does not by itself afford coverage unless the insurer agrees.  In *Tribeca*, the court observed that an additional insured must be listed on the face of the policy.  As discussed above, the Agency did not convey a request to endorse the loss payees onto the policy, nor list Hovey as an additional insured.   Because the Evidence of Insurance Form does not confer coverage, Cincinnati has no obligation under the Blue Badger policy to indemnify the Defendants.

As a side note, Wells Fargo asserts fraud against Cincinnati.  Wells Fargo argues that Cincinnati represented that Wells Fargo is a loss payee, and subject to the terms and conditions of the underlying insurance, be afforded coverage for the loss.  As noted above, the Evidence of Insurance Form was never communicated to Cincinnati. Cincinnati did not draft or issue the form. The form was never endorsed onto or made a part of the policy.  Wells Fargo cannot

11

establish that Cincinnati made any representation such that Wells Fargo would or could rely upon it and would in turn subject Cincinnati to tortious conduct separate from the alleged breach. Further, any such fraud would have to be tortious conduct that is in fact separate from any alleged breach of contract. Michigan law does not recognize an independent cause of action based upon a bad faith breach of contract.  "We decline to follow the California court and to declare the mere bad-faith breach of an insurance indemnity contract an independently and separately actionable tort and to thereby open the door to recovery for mental pain and suffering caused by breach of a commercial contract." See *Kewin v. Massachusetts Mutual Life Ins. Co*., 409 Mich 401, 423; 295 NW2d 50, 56 (1980).  An insurer may be held liable only for tortious conduct that is separable from the insurer's duties under the insurance contract.  *Hearn v. Rickenbacker*, 428 Mich 32; 400 NW2d 90 (1987).

Wells Fargo's claim is essentially that it is entitled to proceeds as a loss payee and that Cincinnati has failed to honor its obligation under the contract.  As Wells Fargo has failed to establish tortious conduct separate from any alleged breach, the fraud allegations should be dismissed as well.

### B.  PURPLE LEAF LEASING

**I.     Purple Leaf Leasing, LLC, and Conversely Hovey, Have Failed To Establish The Loss Occurred Within The Policy Period.**

It is Purple Leaf Leasing's burden to establish that coverage exists under the policy of insurance.  See *Elston-Richards Storage Co. v Indemnity Ins Co of North America*, 194 F Supp 673 (ED Mich, 1960) *aff'd* 291 F2d 627 (6th Cir. 1961)).  It is an axiom of Michigan law that a party's rights are fixed at the time of the loss. See *Pink v Smith* 281 Mich 107; 274 NW 727 (Mich 1937).  In this instance, Hovey has admitted that he does not know when the equipment

was stolen[2] (See Document #39-3, pp. 34, 55). The equipment could very well have been stolen after the inception of coverage (July 17, 2006), but it is equally true that the equipment could have been stolen before the policy went into effect. Hovey was last at the site in May of 2006; he claims to have received a call about two weeks before discovering the loss asking that the equipment be moved (around July 15th before the inception of the policy). Purple Leaf Leasing has the burden to establish the loss occurred within the policy period and cannot. Even as a third-party beneficiary, Hovey must establish coverage under the policy. Given that the date of the theft cannot be quantified, Hovey and Purple Leaf Leasing have failed in their ability to establish coverage.

Even if Purple Leaf Leasing could establish the date of loss, it has no right to claim proceeds as it has no insurable interest in the property.

## II. Purple Leaf Leasing, LLC Has No Insurance Interest In The Property.

In its previous motion, Hovey points out that in order to establish an insurable interest, it is necessary to show that a person or entity will gain an advantage by its existence, or he will suffer a loss if it is damaged or destroyed. *Capital Mortgage Corp v Michigan Basic Prop Ins Ass'n,* 78 Mich App 570, 574; 261 NW 2d 5, 7 (1977) (quoting *Harrison v Fortlage,* 161 US 57 (1896)). This insurable interest may be entirely disconnected from any title, lien or possession. *Crossman v American Ins Co,* 198 Mich 304; 164 NW 428 (1917).

In this instance, Hovey d/b/a Purple Leaf **Nursery** owns the equipment. Hovey entered into an agreement with Blue Badger such that Blue Badger would rent the equipment from Hovey. When the equipment was in use by Blue Badger, Blue Badger would make the lease

---

[2] Hovey cannot say if the loss occurred while the Blue Badger policy was in force or while the Purple Leaf Leasing policy was in force.

payments.  Hovey directed that the payments for the lease be sent to Purple Leaf Leasing.  From May to the date the equipment is found missing, there are no lease payments being made by Blue Badger because the equipment is sitting idle.  The only reason Purple Leaf Leasing receives payments is because of the gratuitous wish by Hovey to have the lease payments sent to Purple Leaf Leasing, LLC.  If not for such an arrangement, Purple Leaf Leasing would receive nothing and would have lost nothing.  There was no agreement between Hovey and Purple Leaf Leasing that required Blue Badger send the payments to Purple Leaf Leasing.

Simply, Purple Leaf Leasing had no interest in the property other than an incidental benefit to receive proceeds. That is not enough to establish an insurable interest.  It should also be noted that if the loss date cannot be established, then Purple Leaf Leasing has no right to receive proceeds.

**III.    Loss Payees Have No Right To Recover Under The Policy.**

The loss payees are not entitled to recover either. In this instance, the loss payable provision of the Purple Leaf Leasing policy provides:

> The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule.
>
> **A.**    LOSS PAYABLE
>
> For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest.  We will:
>
> **1.**  Adjust losses with you; and
>
> **2.**  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

The policy provision is what is known as an ordinary or lender loss payee clause. See

*Foremost v Allstate Ins. Co*., 439 Mich 378; 486 NW2d 600 (1992).

In general, there are two types of loss payable clauses, otherwise known as mortgage clauses, contained in insurance policies which protect lienholders.  The

14

> first type, commonly known as an ordinary loss payable clause, directs the insurer to pay the proceeds of the policy to the lienholder, as its interest may appear, before the insured receives payment on the policy.  Under this type of policy, the lienholder is simply an appointee to receive the insurance fund to the extent of its interest, and its right of recovery is no greater than the right of the insured.  There is no privity of contract between the two parties because there is no consideration given by the lienholder to the insured.  Accordingly, a breach of the conditions of the policy by the insured would prevent recovery by the lienholder.

When an ordinary loss payee clause is employed in a policy, it means the loss payee has no greater rights to the proceeds than the named insured.  Whatever defeats the named insured's claim will conversely defeat the loss payee's claim.  If Purple Leaf Leasing, as named insured, has no insurable interest in the policy, and would not be entitled to proceeds under the policy, so to the loss payees are not entitled to receive insurance proceeds.  If Purple Leaf Leasing is unable to establish that the loss occurred within the policy period and thus is unable to secure coverage, so to the lienholders have no rights to the proceeds.

**IV.   Hovey Is Not An Additional Insured Or Third-Party Beneficiary Under The Purple Leaf Leasing, LLC Policy Of Insurance.**

Cincinnati adopts the argument made above relative to Hovey's claim that he is a third-party beneficiary or an additional insured under the Blue Badger policy.  As in the previous argument, in order to be listed as an additional insured, Hovey's interest must be stated on the policy. It is not.  Further, there is no mention of Hovey's interest in the property in the application.  He is mentioned as the person to whom the policy is to be sent, but that is all.  As Ms. Bartes noted, the only insured named in the application is that of Purple Leaf Leasing, LLC (**Exhibit C**, Bartes Deposition, p. 42).  Again, no documents or records were sent to Cincinnati giving them notice of Hovey's ownership.  As Scott. Miller advised in his deposition, he believed the owner was Purple Leaf Leasing, LLC.  As he mentioned further, the policy was applied for as requested by Hovey (**Exhibit O**, Miller Deposition, pp. 36, 37, 45, 52, 53).

15

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff/Third-Party Defendant and Counter-Defendant, Cincinnati Insurance Company, respectfully requests that this Honorable Court declare the rights of the parties and find that Cincinnati has no obligation to indemnify the Defendants. Further, Cincinnati asks that the Counter-Claims be dismissed with prejudice.

Respectfully submitted,

By:    /s/ Glen Howard Pickover
GREGORY AND MEYER, P.C.
Attorney for Cincinnati Insurance Company
340 E. Big Beaver Road, Suite 520
Troy, MI  48083
(248) 689-3920
gpickover@gregorylaw.com
(P43373)

Dated:  October 1, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Heidi E. Warren, Cynthia Fullwood, Glen Howard Pickover, Kevin J. O'Dowd, John R. Monnich, and Brian C. Summerfield, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  None.

/s/ Glen Howard Pickover
GREGORY AND MEYER, P.C.
Attorney for Cincinnati Insurance
340 E. Big Beaver Road, Suite 520
Troy, MI  48083
(248) 689-3920
gpickover@gregorylaw.com
(P43373)